IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICIA A. SIMS, on behalf of herself
and others similarly situated,

                    Plaintiff,

v.                                                          Case No.  22-2112-JWB

KAHRS LAW OFFICES, P.A.,

                    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motions to dismiss.  (Docs. 11, 36.)  The

motions have been fully briefed and are ripe for decision.  (Docs. 12, 27, 30, 37, 45, 46, 57.)

Defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. 11) is GRANTED and

Defendant's motion to dismiss for failure to state a claim (Doc. 36) is DENIED AS MOOT for the

reasons stated herein.

**I.      Facts**

In March 2018, Plaintiff Patricia Sims visited the website of Advance Financial because

she was interested in obtaining a personal loan.  Plaintiff proceeded to fill out the application for

the loan but she did not finalize the application, nor did she receive any funds from Advance

Financial.  On or about March 24, 2021, Advance Financial filed suit against Plaintiff in Jackson

County, Missouri seeking $4,047.42.   Defendant Kahrs Law Offices, P.A. ("Kahrs" or

"Defendant") represented Advance Financial in the suit.  When filing suit, Kahrs attached an

exhibit called an Advance Financial Line of Credit Disclosure and Account Agreement (the

"exhibit").  (Doc. 1 at 4.)  The exhibit listed Plaintiff's personal bank account number and routing

number. Kahrs failed to redact the personal information from the exhibit. The exhibit also contained Plaintiff's full name, address, and telephone number. (*Id.* at 5.) Plaintiff was personally served by a process server with the summons, petition, and exhibit.

On or about July 12, 2021, Plaintiff's counsel left a message for defense counsel to inform Kahrs that Plaintiff was represented by counsel in the state court action. One week later, Advance Financial dismissed its suit against Sims without prejudice. Three months later, Plaintiff brought an action against Advance Financial in state court.[1] At that time, Plaintiff informed Advance Financial that the exhibit containing her personal information was filed in the prior lawsuit without properly redacting the personal information. (*Id.* at 5.) Kahrs then moved to seal the exhibit from the public docket. Plaintiff alleges that her personal information was publicly available for almost a year.

According to the complaint, Advance Financial lends money to individuals in several states, including Kansas, Nebraska, and Missouri. Since 2020, Kahrs has filed approximately 1,000 lawsuits on behalf of Advance Financial in Missouri. Plaintiff alleges that Kahrs attaches a copy of each debtor's agreement to the petition upon filing an action to collect the debt that Advance Financial is owed or allegedly owed. Plaintiff further alleges that Kahrs does not redact the agreement or move to seal the agreement upon filing and that Kahrs disseminated copies of the unredacted agreements to process servers. As a result, Kahrs made more than 1,000 disclosures of other debtors' bank account and routing numbers. (*Id.* at 3.)

Plaintiff brings claims in her personal capacity and on behalf of others similarly situated. Plaintiff alleges she has been injured by Kahrs' actions in that her personal information has been publicly disclosed, she has suffered from emotional distress, she has suffered from a loss of

---

[1] Plaintiff has not alleged the substance of her claims against Advance Financial in state court.

privacy, been deprived of the value of her personal information, and is at risk for identity theft due to the public disclosure of her personal information.  (*Id.* at ¶¶ 69–71.)  Plaintiff alleges that the potential class members, which allegedly include more than 1,000 individuals, have similar injuries.  Plaintiff brings claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, the Missouri Right to Financial Privacy Act, Mo. Rev. Stat. § 408.680 ("Missouri Act"), and for common law negligence.  Plaintiff seeks an injunction against Defendant prohibiting any further disclosures of personal information in public filings and an order requiring it to remedy any publicly filed documents with personal information.  Plaintiff also seeks statutory damages under the FDCPA and Missouri law, actual damages, and attorney fees.  Plaintiff has alleged that this court has jurisdiction under 28 U.S.C. § 1331 because she has alleged a claim under the FDCPA.  Further, Plaintiff alleges that this court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Kahrs has now moved to dismiss Plaintiff's complaint.  Kahrs asserts that Plaintiff lacks standing because she has not sufficiently alleged an injury under the FDCPA.  Kahrs further argues that Plaintiff has not sufficiently alleged that this court has jurisdiction under CAFA.  Finally, Kahrs argues that Plaintiff's complaint fails to state a claim.

## II.   Standard

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).  When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946).  Because federal courts

are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, Defendant has moved to dismiss for lack of subject matter jurisdiction via a facial attack. Therefore, the court accepts Plaintiff's allegations as true and will consider whether they establish subject matter jurisdiction. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III. Analysis

### A. Standing under the FDCPA

Congress enacted the FDCPA to protect consumers from "abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692. Plaintiff brings her claim under 15 U.S.C. § 1692f, which prohibits using unfair or unconscionable means to collect or attempt to collect any debt. The FDCPA provides that an individual may bring a cause of action for a violation of the Act and may recover actual damages or statutory damages not exceeding $1,000. 15 U.S.C. § 1692k. Additionally, a prevailing plaintiff is entitled to costs and attorney's fees. Kahrs argues that Plaintiff lacks standing to bring her claim because she has not sufficiently pleaded that she suffered an injury in fact.

Constitutional standing requires (i) that the plaintiff suffer an "injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). These requirements ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). With respect to Plaintiff's FDCPA claim, Kahrs asserts Plaintiff's allegations fail to satisfy the first requirement, that she suffered an injury that is concrete, particularized, and actual or imminent. To show the injury was "concrete," it must be "real" rather than "abstract," but it does not mean that the injury must be tangible. *Id.* (citing *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021)). To find that the alleged injury is particularized, it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Finally, an alleged "future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

Relevant to standing, Plaintiff has asserted that she suffered the following concrete injuries as a result of Kahrs' conduct: 1) the loss of the value of her personal information; 2) "risk of identity theft and identity harm;" and 3) "garden variety emotional distress." (Doc. 27 at 3–4.) Further, Plaintiff suggests that the FDCPA violation she has alleged in this case is sufficient to establish standing under *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th

Cir. 2006).[2]  (*See* Doc. 27 at 4.)  *Robey* stands for the proposition that a plaintiff need not establish actual damages in light of the statutory remedy available under the FDCPA.  *See Robey*, 434 F.3d at 1212.   Further, the Tenth Circuit addressed whether the plaintiff in *Robey* had standing under the statute.  The plaintiff alleged a statutory violation due to an unlawful attempt to collect a debt for attorney's fees.  The Tenth Circuit held that the plaintiff had suffered an injury in fact even though he did not pay the fees.  *Id.  Robey* seems to suggest that a violation of a legal right created by Congress is sufficient to establish an injury in fact.  *Id.* ("[W]e recognize we are dealing with legal rights created by Congress under the FDCPA.  Hence, the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether Robey has suffered a cognizable statutory injury under the FDCPA.")  Recent Supreme Court and Tenth Circuit authority, however, confirm that a plaintiff must allege a concrete injury to satisfy standing even when the Plaintiff has alleged a statutory violation of a legal right.  *TransUnion*, 141 S. Ct. 2190; *Lupia*, 8 F.4th at 1190.

In *TransUnion*, the Supreme Court addressed whether a violation of the Fair Credit Reporting Act ("FCRA"), a different consumer protection statute, created a concrete injury such that the plaintiff had standing to bring a claim.  141 S. Ct. 2190.  In that case, TransUnion, a consumer reporting agency, had created a product called "OFAC [the U.S. Treasury Department's Office of Foreign Assets Control] Name Screen Alert," to help businesses avoid transacting with individuals on OFAC's list of certain nationals "who threaten America's national security."  *Id.* at 2201.  If TransUnion determined that the consumer's first and last name matched with an individual on that list, there was an alert on the consumer's credit report.  Under the FCRA, a consumer reporting agency must follow reasonable procedures to ensure the accuracy of

---

[2] This argument is not sufficiently clear.  It appears that Plaintiff suggests that she need not demonstrate an additional injury but then she goes on to state that she has suffered injuries.  (Doc. 27 at 4–5.)  As such, both arguments will be addressed.

6

information in a consumer's credit file.  *Id.*  The named plaintiff, Ramirez, filed a class action suit, alleging several violations of the FCRA which provides for the recovery of actual damages or statutory damages, as well as punitive damages and attorney's fees.  *Id.* (citing § 1681n(a)).  After trial, the jury awarded statutory and punitive damages to the class.  The Ninth Circuit affirmed and agreed with the district court that the plaintiffs had standing to bring suit.  On appeal, the issue before the Court was whether the plaintiffs lacked standing.

The Supreme Court concluded that "bare procedural violations, divorced from any concrete harm" are insufficient to establish standing "even in the context of a statutory violation."  *Id.* at 2205, 2213 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).  "Congress may enact legal prohibitions and obligations.  But under Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* at 2205 (emphasis in original).

> [I]f the law of Article III did not require plaintiffs to demonstrate a concrete harm, Congress could authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law.  Such an expansive understanding of Article III would flout constitutional text, history, and precedent.  In our view, the public interest that private entities comply with the law cannot 'be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue.'

*Id.* at 2206 (quoting *Lujan*, 504 U.S. at 576–77).

Therefore, the fact that the statute authorized suit based on the FCRA violation and provided a statutory remedy was not sufficient to establish standing.  *Id.* at 2205 ("an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law.").  The plaintiffs in *TransUnion* did not suffer a tangible harm, such as a monetary loss, but the Court noted that certain intangible harms were sufficient to

constitute a concrete injury when those harms have "traditionally [been] recognized as providing a basis for [a] lawsuit[] in American courts." *Id.* at 2204. Those intangible harms include reputational harms and privacy harms, such as intrusion upon seclusion and disclosure of private information. *Id.*

The Court held that the alleged violation in *TransUnion* was similar to the harm associated with the tort of defamation. "Under longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule is published to a third party." *Id.* at 2208 (internal citation and quotation omitted). Therefore, the plaintiffs whose inaccurate information had been disclosed to third parties suffered a concrete injury and had standing to bring suit. The remaining plaintiffs, however, did not suffer an injury associated with the tort of defamation because there was no disclosure to a third party. *Id.* ("The plaintiffs cannot demonstrate that the misleading information in the internal credit files itself constitutes a concrete harm.").

After *TransUnion*, the Tenth Circuit addressed FDCPA standing in both *Lupia, supra,* and *Shields v. Pro. Bureau of Collections of Md., Inc*., 55 F.4th 823 (10th Cir. 2022). In *Shields*, the Tenth Circuit discussed that within the context of the FDCPA, tangible harms included injuries "like detrimental reliance on a collection letter that misrepresents debt" and that an intangible harm "might occur if a collector used billboards to publicly shame a private citizen into paying his debt." 55 F.4th at 827. After *Spokeo* and *TransUnion*, the court is to look to both history and the judgment of Congress when considering whether an alleged intangible harm constitutes an injury in fact. *Id.* (quoting *Spokeo*, 578 U.S. at 340). The "central question is 'whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 828 (citing *TransUnion*, 141 S. Ct. at 2200). The "harms must be similar in kind,

not degree" such that a plaintiff could have standing to bring a statutory claim even if that plaintiff could not succeed on the traditional tort. *Id.* (quoting *Lupia*, 8 F.4th at 1192). Under that framework, the Tenth Circuit held that the plaintiff in *Lupia* had standing, but the plaintiff in *Shields* did not. The court will address those cases in turn.

In *Lupia*, the plaintiff alleged a violation of the FDCPA based on the defendant's attempts to collect a debt after the plaintiff had sent a cease and desist letter to the defendant. According to the plaintiff, the defendant left a voicemail message about the debt a day after she sent the certified cease and desist letter. The plaintiff alleged a violation of 15 U.S.C. § 1692g(b), which prohibits collection of a debt after being notified that the debt is disputed, and a violation of 15 U.S.C. § 1692c(c), which prohibits the debt collector from communicating with the debtor after receiving a notice in writing that the consumer wishes the debt collector to cease communication. *Lupia*, 8 F.4th at 1194–95 (citing 15 U.S.C. §§ 1692g(b) and 1692c(c)).

In arguing that she had standing, the plaintiff asserted that she suffered a violation of her privacy. The Tenth Circuit discussed that in enacting the FDCPA "Congress recognized that abusive debt-collection practices may intrude on another's privacy interests." *Id.* at 1192 (citing 15 U.S.C. § 1692(a) ("[a]busive debt collection practices contribute to ... invasions of individual privacy")). The Tenth Circuit concluded that the plaintiff sufficiently alleged that she suffered a concrete injury even though she suffered no actual damages. A single phone call in violation of the FDCPA was a sufficient injury as it was "an unwanted intrusion into a plaintiff's peace and quiet." *Id.* (discussing that the inquiry determines whether the plaintiff has alleged a similar "*kind* of harm recognized at common law" but noting that the harm need not intrude to the "degree required at common law.") (emphasis in original).

In *Shields*, the defendant sent the plaintiff three collection letters regarding outstanding student debt.  According to the plaintiff, the letters were misleading because they failed to indicate that the debt balance could increase.  The plaintiff brought suit alleging violations of the FDCPA by disclosing her debt to a third party mailing service and by sending misleading letters.  The Tenth Circuit held that she lacked standing.  With respect to her disclosure claim, the plaintiff argued that her injury was similar to that of the traditional tort of public disclosure of private facts.  55 F.4th at 828.  That "tort occurs when a tortfeasor gives 'publicity to a matter concerning the private life of another' and 'the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'"  *Id.* (quoting Restatement (Second) of Torts § 652D (Am. L. Inst. 1977)).  Notably, the Tenth Circuit held that her alleged injury was not similar to the tort of public disclosure because she only alleged disclosure to the defendant's "outside mailer—certainly not the public at large nor someone likely to widely communicate her debt."  *Id.* at 829.  Although the plaintiff did not have to "plead and prove the tort's elements to prevail," she at least had to allege a similar harm and, without publication, the alleged harm was not similar to the tort of public disclosure.  *Id.*  The Tenth Circuit further held that, with respect to her claim of false representation, the plaintiff did not allege that she relied on any misrepresentation.  Therefore, she did not "allege the same kind of harm as required by the tort of fraud."  *Id.* at 830.

With that background, the court will now turn to Plaintiff's arguments regarding standing.  Plaintiff, as the party invoking this court's jurisdiction, bears the burden to demonstrate that she has standing.  *TransUnion*, 141 S. Ct. at 2207.  "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."  *Id.* at 2208 (quoting *Tyson Foods,*

*Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).   Plaintiff must demonstrate standing for each claim that she brings and each form of relief she seeks.   *Id.*

### 1.   *Value of Plaintiff's Personally Identifiable Information*

Plaintiff first argues that the disclosure of her personally identifiable information ("PII") resulted in a loss of the value of that information.   This allegation suggests a tangible harm in that Plaintiff has allegedly suffered a financial loss.   Turning to her complaint, Plaintiff alleges that she and the class have been "deprived of the value" of their PII.   (Doc. 1 at ¶¶ 49, 84, 100.)   Plaintiff's allegations, however, are conclusory and lack any factual allegations to support a finding that she has suffered a concrete injury.   Even if Plaintiff's PII has monetary value, she fails to allege any facts explaining how this value was lost due to the disclosure.   For example, she does not allege that she tried to sell her information and couldn't sell it or was offered less than its value due to the disclosure by Kahrs.   The court finds that Plaintiff has failed to plausibly allege an actual concrete injury based on the lost value of her PII.   *Blood v. Labette Cnty. Med. Ctr.*, No. 22-4036-HLT, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022) (citing *In re Capital One Consumer Data Security Breach Litig.*, 488 F. Supp. 3d 374, 403–04 (E.D. Va. 2020) (citing cases with similar conclusions)); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 524, 534 (D. Md. 2016)).

### 2.   *Risk of Identity Theft and Harm*

Next, Plaintiff alleges she has suffered a concrete injury because she has alleged the "risk of identity theft and identity harm" due to the disclosure of her PII.   (Doc. 27 at 3.)   Plaintiff asserts that this harm is similar to the risk of injury in medical monitoring cases.   (*Id.*)   Plaintiff, however, fails to cite any authority in support of her position that this alleged risk is sufficient to confer standing under the FDCPA.   An allegation of a mere risk of future harm—without plausible

allegations that such risk is either imminent or caused a separate concrete harm—cannot be the basis for standing. *TransUnion*, 141 S. Ct. at 2210–11.

Reviewing her complaint, Plaintiff repeatedly alleges that the public disclosure of her PII puts her at risk for identity theft and identity fraud. (Doc. 1 at ¶¶ 48, 52, 70, 83, 97, 99.) Plaintiff's allegations are entirely conclusory, however, and the factual allegations do not support a concrete risk of imminent future harm. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (discussing that a fear of future harm is cognizable only when the feared harm is "certainly impending."). According to the allegations, Kahrs publicly filed the exhibit containing her PII in an action to recover a debt in state court (which, according to Plaintiff, was an invalid debt). Plaintiff alleges that the document was placed under seal after she notified Kahrs of its failure to seal the document. As a result, the exhibit that contains Plaintiff's PII is no longer publicly available and Plaintiff has not alleged that any individual obtained her PII and is likely to use it to her detriment. Further, Plaintiff has not alleged that any person actually looked at the exhibit when it was filed in the public record. Plaintiff has also failed to allege that any person is currently in possession of her account information. As such, Plaintiff's "risk" of injury is not concrete in that Plaintiff has failed to allege any facts that would lead the court to determine that Plaintiff is at imminent risk of identity theft. Plaintiff's alleged risk of future identity fraud or identity theft is "too speculative to satisfy the well-established requirement that the threatened injury must be 'certainly impending.'" *Clapper*, 568 U.S. at 401 (citation omitted).

Therefore, Plaintiff has not alleged an injury in fact pertaining to this risk sufficient to confer standing, not even for her claim seeking purely injunctive relief.[3] *See C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862, at *7–8 (D. Kan. Mar. 31, 2022).

---

[3] Further, Plaintiff's claim for injunctive relief is moot. The court lacks subject-matter jurisdiction over a claim that is moot. *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013). "When it becomes impossible for a court to

3.      *Emotional Distress*

Finally, Plaintiff argues that her allegation of "garden variety emotional distress" is sufficient to satisfy the injury in fact requirement.  (Doc. 27 at 6–7.)  Defendant argues that such an allegation is insufficient to establish a concrete injury.  In reviewing whether this is sufficient to establish an injury in fact, it is important to review Plaintiff's factual allegations concerning this injury which include the following:

> Plaintiff and the putative class members' actual damages include, but are not limited to, aggravation, inconvenience, embarrassment, frustration, and dissemination of false credit information in public.
>            ***
> As a result of these actions, Plaintiff and the putative class members have suffered garden variety emotional distress.

(Doc. 1 at ¶¶ 69, 85,98.)

Although Plaintiff has alleged that she suffered emotional distress, aggravation, inconvenience, embarrassment, and frustration, Plaintiff has failed to set forth any facts regarding these allegations.  Viewing her complaint liberally, the court construes her complaint as stating she was aggravated, inconvenienced, embarrassed, frustrated, and suffered distress as a result of her information being filed on the public docket in the Missouri court system.  Based on her allegations, the court finds that these alleged intangible injuries are not sufficient to establish a concrete injury under the FDCPA.

Turning to the Supreme Court's instruction in *TransUnion*, the court is to determine whether Plaintiff's alleged emotional harms bear a relationship to a harm that has traditionally

---

grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (citation omitted).  In her claim for injunctive relief, Plaintiff seeks an order requiring Kahrs to "remedy the previous public filing" and "not disclose such information in public filings now and in the future."  (Doc. 1 ¶ 53.)  According to the complaint, however, Kahrs sealed the exhibit with Plaintiff's PII and the state case has been dismissed.  Plaintiff argues that her claim is not moot because Kahrs could file an action in the future.  (Doc. 27 at 9.)  Plaintiff, however, fails to allege any facts that would support a finding that there is a real threat of Kahrs publicly filing her PII in the future.  Therefore, her claim for injunctive relief is moot and this court lacks jurisdiction over her claim.

been recognized under the law, and also look to the judgment of Congress as expressed in the relevant statute.  Sidestepping that analysis, Plaintiff argues that dicta from the Supreme Court in *TransUnion* supports her position that an allegation of emotional distress by itself is sufficient. (Doc. 27 at 6.)  In *TransUnion*, the Court noted that the plaintiffs whose information was not disclosed had not alleged "that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses."  *TransUnion*, 141 S. Ct. at 2211.  The Supreme Court further explained as follows:

> For example, a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm.  We take no position on whether or how such an emotional or psychological harm could suffice for Article III purposes—for example, by analogy to the tort of intentional infliction of emotional distress.

*Id.* at 2211, n. 7.

Therefore, contrary to Plaintiff's assertion, the Supreme Court did not suggest that an allegation of emotional injury, in and of itself, is sufficient to confer standing for a claim based on a statutory violation.  Rather, the Court returned to the premise that an intangible harm must bear some relationship to a harm that has traditionally been recognized to confer standing.  Here, Plaintiff makes no attempt to argue that the allegations in her complaint are similar to the traditional tort of intentional infliction of emotional distress or that her allegations are similar to any other tort.  The court finds that Plaintiff has failed to establish that her alleged harm has a close relationship to a harm historically recognized as providing a basis for a lawsuit and that Congress intended to protect this intangible harm under the FDCPA.

In *Garland v. Orlans, PC*, the Sixth Circuit held that a general allegation of anxiety was "an intangible harm *without* 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'"  999 F.3d 432, 439 (6th Cir. 2021) (quoting *Spokeo*, 136 S. Ct.

at 1549) (emphasis in original).  Anxiety is a form of emotional harm that "comes in many different shapes and sizes, and so a bare allegation of anxiety doesn't tell us much."  *Id.*  The Sixth Circuit discussed that certain forms of emotional distress are cognizable under common law, "but others are not."  *Id.*  As such, the distinction turns on the defendant's conduct and the severity of the emotional distress.  *Id.*  Here, Plaintiff has wholly failed to identify how her alleged harms of garden variety emotional distress, frustration, embarrassment, or inconvenience are similar to emotional harms cognizable at common law.  Rather, emotional injury torts typically require extreme and outrageous behavior under common law.  *See id.* at 439–40.  And the court declines to find that the failure to redact or seal a document is extreme and outrageous behavior.  Moreover, a "general allegation of emotional harm like anxiety or distress falls short of cognizable injury as a matter of general tort law, because liability for emotional harm arises only where [the emotional distress is] extreme."  *Id.* at 440 (cleaned up) (quoting Restatement (Second) of Torts § 46 cmt. j).

Further, Plaintiff's generalized claims of aggravation, inconvenience, embarrassment, and frustration are insufficient to confer standing.  In *Shields*, the Tenth Circuit held that allegations of "confusion and misunderstanding are insufficient to confer standing."  55 F.4th at 830 (citing *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022)).  In support of that holding, the Tenth Circuit relied on the Seventh Circuit's decision in *Pierre* which held that, in the context of the FDCPA, psychological states, such as emotional distress, worry, and confusion, are not concrete injuries.  *See Pierre*, 29 F.4th at 939 (citing *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)).  The Tenth Circuit's reliance on *Pierre* further supports a finding that the court of appeals would conclude that Plaintiff's alleged emotional injuries are insufficient to support a finding of an injury in fact.

As alleged, Plaintiff's harms do not bear a relationship to the emotional injury tort of intentional infliction of emotional distress.  Further, Plaintiff makes no attempt to argue that her alleged emotional injuries bear any relation to a traditional harm.  As the proponent of this court's jurisdiction, it is Plaintiff's burden to establish standing and she has failed to do so.

Plaintiff's remaining arguments are also unconvincing.  In arguing that her claim of emotional distress is a concrete injury under the FDCPA, Plaintiff cites to *Hampton v. Barclays Bank Delaware*, No. 18-4071-DDC, 2019 WL 6727083 (D. Kan. Dec. 11, 2019).  (Doc. 27 at 7–8.)  In that case, however, the plaintiff alleged that he suffered damage to his creditworthiness in addition to his emotional injuries.  *Hampton,* 2019 WL 6727083, at *6.  Therefore, *Hampton* is not persuasive here.  Moreover, *Hampton* was decided prior to *TransUnion* and the Tenth Circuit decisions discussed herein.  Plaintiff also cites to several out-of-district cases in a footnote.  (Doc. 27 at 7, n. 37.)  Those cases, which are not binding on this court, are distinguishable for the reasons set forth in Defendant's reply brief.  (Doc. 30.)[4]

The court finds that Plaintiff's allegations regarding emotional harms are not sufficient to establish standing for a violation under the FDCPA.  *Garland,* 999 F.3d at 439; *Pierre,* 29 F.4th at 939; *Simpson v. Revco Sols., Inc*., No. 22-CV-00483-JPG-1, 2022 WL 17582742, at *3 (S.D. Ill. Dec. 12, 2022) (finding that the plaintiff's allegations of "undue stress, anxiety, confusion, annoyance, and emotional distress do not amount to a concrete injury to satisfy Article III standing."); *Wilkinson v. Olympia Dev. of Mich. LLC*, No. 22-10714, 2022 WL 4870781, at *3 (E.D. Mich. Oct. 3, 2022) (finding that "bare allegations of stress, fear, anger, and frustration do not amount to a concrete injury."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A*., 19 F.4th 58, 66

---

[4] The court declines to specifically address the out-of-district cases cited by Plaintiff as she has merely cited to them in a footnote and makes no attempt to argue that the facts alleged in those cases pertaining to the alleged emotional injuries were similar to the allegations in this case.  Moreover, as identified by Defendant, most of the cases included allegations of additional concrete injuries.

(2d Cir. 2021) (finding that a "perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing.")

Plaintiff's memorandum also asserts that she has suffered an injury similar to the traditional harm of public disclosure of private information, citing to the Supreme Court's decision in *TransUnion*.   (Doc. 27 at 6.)   Plaintiff, however, makes no attempt to show how her injury is similar to that traditional tort.   *Id.*   The court declines to consider an argument that Plaintiff has not adequately briefed.[5]   *See Shields*, 55 F.4th at 828 ("She throws out other torts, like defamation, but fails to explain their relevance.").

Further, the court finds that Plaintiff has failed to sufficiently establish that any of her alleged harms are ones that Congress intended to protect against when enacting the FDCPA.   In *Lupia*, the plaintiff asserted a violation of 15 U.S.C. § 1692g(b) and § 1692c(c).   Both statutes identify specific conduct which debt collectors are prohibited from engaging in, such as attempting to collect on a disputed debt and communicating with the debtor after receiving a notice from the debtor.   In *Lupia*, the plaintiff alleged the defendant had violated those specific statutes by engaging in conduct expressly prohibited therein.   The Tenth Circuit discussed that Congress had "recognized that abusive debt-collection practices may intrude on another's privacy interests" and the plaintiff had sufficiently alleged a violation under the statute.   *Lupia*, 8 F.4th at 1192.   Here, Plaintiff does not allege that Kahrs engaged in conduct expressly prohibited by the statute.   Instead,

---

[5] Although Plaintiff did not address the elements of this tort, disclosure of an account number is not conduct that is "highly offensive to a reasonable person" as required to establish this tort.  *See Shields v. Pro. Bureau of Collections of Md., Inc.*, No. 22-CV-2205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021), *aff'd*, 55 F.4th 823 (10th Cir. 2022) (finding that disclosure of debt information was not highly offensive).  Moreover, the court takes judicial notice of the fact that virtually every personal or business check contains the account holder's bank routing number and bank account number.  These instruments have been routinely used by Americans for decades to pay bills and make other common purchases.  With this history of routine disclosure of this information to large swaths of the public through common commercial transactions, it is hard to see how the mere disclosure of that same type of information in a court filing would amount to the giving of publicity to highly offensive information as required to establish the tort of public disclosure of private information.

Plaintiff alleges that Kahrs' actions amounted to a violation of 15 U.S.C. § 1692f, which makes a general prohibition against using unfair or unconscionable means to collect or attempt to collect any debt.  In § 1692f, the statute sets forth eight acts which Congress had in view as unfair or unconscionable in the collection of a debt.  None of those specific prohibitions include anything remotely similar to the failure to redact personal information in a legal action.  Instead, Plaintiff points to the catch-all language in § 1692f stating that the specific violations are not intended to limit the statute's general prohibition on unfair or unconscionable debt collection practices.  *Id.* Plaintiff, however, fails to identify any authority to suggest that Congress would view the failure to redact a loan agreement filed as an exhibit to a state court petition as an unfair or unconscionable means to collect a debt.  Further, the court fails to see how this conduct, which Plaintiff has characterized as negligent, could be re-characterized as an unfair or unconscionable means to collect a debt.  Nor does Plaintiff show that Congress had in view the types of harms she alleges here – lost value of her account number; risk of future harm from disclosure of her account number; or garden variety anxiety and emotional harm from disclosure of her account number – when it passed the FDCPA.  Based on the foregoing, the court finds that Plaintiff lacks standing to bring her claim under the FDCPA as she has failed to sufficiently allege that she suffered a concrete injury in fact as a result of the statutory violation.  Accordingly, this court lacks jurisdiction over Plaintiff's FDCPA claim.

**B.     State Law Claims**

Due to the finding that this court lacks jurisdiction over the federal claim, the only remaining claims are those brought under Missouri state law.  Plaintiff alleged in her complaint that this court had jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332.  As previously set forth, federal courts are courts of limited jurisdiction.  The court may

properly exercise supplemental jurisdiction over any claims related to the claim in which this court had original jurisdiction. 28 U.S.C. § 1367(a). However, if the court has dismissed the claim in which it had original jurisdiction due to a lack of subject matter jurisdiction, this court lacks such discretion to hear supplemental claims and "must dismiss the supplemental claims without prejudice." *See Estate of Cummings v. United States*, 651 F. App'x 822, 828 (10th Cir. 2016), *as clarified on reh'g* (June 24, 2016) (citing *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1167 (10th Cir. 2004)). Therefore, this court cannot retain jurisdiction over the state law claims pursuant to § 1367(a).

Turning to the diversity statute, Plaintiff alleged that this court had diversity jurisdiction under the Class Action Fairness Act ("CAFA"). Under CAFA, this court has jurisdiction over a class action in which any member of a class of plaintiffs is a citizen of a State different from a defendant, the class includes more than 100 members, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d). The amount in controversy represents the aggregated claims of all putative class members. *Id.* The court is to accept the plaintiff's amount-in-controversy allegation if it is made in good faith. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).

Although Plaintiff alleged that this court had jurisdiction under CAFA, Plaintiff failed to allege the amount in controversy. (Doc. 1.) In response to the motion to dismiss, Plaintiff argues that her allegations are sufficient to establish jurisdiction because there are at least "1,000 members in Missouri alone" and the class members are entitled to statutory damages of $1,000 each under the Missouri Privacy Act claim. (Doc. 27 at 16.) Plaintiff argues that this amounts to 20% of the amount in controversy ($1,000,000) and the remaining amount is accounted for in the claims for attorney's fees and punitive damages. (*Id.*) Plaintiff, however, fails to put a value on the amount

of attorney's fees and potential punitive damages. It is Plaintiff's burden to establish that this court has jurisdiction over her claims under CAFA and she has failed to do so.

Notably, Plaintiff relies on the statutory damages available under the Missouri Right to Financial Privacy Act, Mo. Rev. Stat. § 408.680. Under that statute, a financial institution cannot provide financial records of a customer to any government authority unless it falls under a statutory exception. The statute provides a remedy of actual damages, $1,000 penalty, and attorney's fees. Mo. Rev. Stat. § 408.696. Plaintiff has not alleged any actual damages. Therefore, if she succeeded on her claim, she would be entitled to the statutory penalty and attorney's fees.

In her complaint, Plaintiff asserts that Kahrs violated this statute by disclosing her loan agreement to the Missouri court.[6] As discussed herein, Plaintiff must demonstrate standing for each claim she brings. *TransUnion*, 141 S. Ct. at 2208. To have constitutional standing, Plaintiff must have suffered an injury in fact. Plaintiff identifies the same alleged injuries for this claim as she alleged for her claim under the FDCPA. For the reasons previously discussed herein, the court finds that those injuries are not sufficient to establish standing. Because Plaintiff does not have standing to bring this claim, it cannot be included in determining whether the amount in controversy exceeds $5,000,000. *See Harris v. CVS Pharmacy, Inc.*, No. 13-2329-AB, 2015 WL 4694047, at *5 (C.D. Cal. Aug. 6, 2015) (finding that a plaintiff cannot rely on a statutory damages claim to satisfy CAFA's amount in controversy when the court has determined that the plaintiff lacks standing to bring that claim); *Petkevicius v. NBTY, Inc.*, No. 14-2616-CAB, 2017 WL 1113295, at *5 (S.D. Cal. Mar. 24, 2017) (same); *Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1303 (S.D. Fla. 2014).

---

[6] Although Kahrs challenges the sufficiency of Plaintiff's allegations and makes several arguments regarding this claim, the court declines to address those allegations in light of its finding that this court lacks jurisdiction.

Plaintiff has the burden to plausibly allege how the "stakes exceed $5 million." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 914 (10th Cir. 2016).  She has failed to do so and lacks standing to bring the Missouri Privacy Act claim which she relied on for a significant portion of her damages.  Therefore, Plaintiff has failed to sufficiently allege jurisdiction under CAFA.[7]

## IV.   Conclusion

Defendant's motion to dismiss (Doc. 11) is GRANTED.  Defendant's motion to dismiss (Doc. 36) for failure to state a claim is DENIED.  This action is dismissed without prejudice for lack of jurisdiction.

IT IS SO ORDERED.  Dated this 31st day of March, 2023.

    s/ John W. Broomes
    JOHN W. BROOMES
    UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff requests leave to amend to plead additional facts showing that the amount in controversy exceeds $5 million in the event that the court finds it lacks jurisdiction under CAFA.  (Doc. 27 at 16, n. 87.)  Plaintiff, however, failed to comply with this court's rules requiring a party to submit a proposed amended complaint.  D. Kan. R. 15.1.  Further, Plaintiff's brief does not provide a sufficient basis to suggest that Plaintiff could plausibly allege jurisdiction under CAFA given this court's rulings herein.